U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2013 DEC 18 PM 1:00

BY_____
         DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| SHANE EDWARD CASEY, | ) |
| Plaintiff, | ) |
| v. | ) Case No. 5:12-cv-284 |
| ANDREW PALLITO, GREG HALE, DAN DAVIES, and KORY STONE, | ) |
| Defendants. | ) |

**OPINION AND ORDER ADOPTING IN PART MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**
(Docs. 52 & 58)

This matter came before the court on the objection of Plaintiff Shane Edward Casey (Doc. 63) to the Magistrate Judge's Report and Recommendation ("R & R") filed on July 25, 2013. (Doc. 58.) In this action, Plaintiff's 42 U.S.C. § 1983 complaint alleges that Defendants Andrew Pallito, Greg Hale, Dan Davies, and Kory Stone violated his rights under the First, Eighth, and Fourteenth Amendments, as well as the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"). Plaintiff also requests appointment of counsel under 28 U.S.C. § 1915(e)(1). In the R & R, the Magistrate Judge recommends granting in part and denying in part Defendants' motion to dismiss under Fed. R. Civ. P. 12(b)(6) and also recommends denying Plaintiff's motion for appointment of counsel.

Plaintiff is self-represented. Defendants, all of whom are current Vermont Department of Corrections ("DOC") employees, are represented by Vermont Assistant Attorney General David R. McLean.

**I.      Factual Background.**

Except where noted, the parties do not dispute the Magistrate Judge's recitation of the operative facts, which are summarized herein. Accordingly, the court relies upon the

underlying facts as set forth in the R & R with the exceptions indicated. For purposes of the motion to dismiss, all facts alleged in the Amended Complaint are "accept[ed] as true." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

Plaintiff is a Vermont inmate in DOC's custody and is currently serving two concurrent sentences of twenty years to life on two counts of aggravated sexual assault. On June 15, 2011, while incarcerated at the Chittenden Regional Correctional Facility ("CRCF"), Plaintiff met inmate Martin Morales, whom had been designated "severely functionally impaired"[1] by DOC staff. Plaintiff was employed at the CRCF law library and gym, and he became acquainted with Mr. Morales through their interactions at the law library. Over time, the two men grew closer and spent time together, discussing religion and therapy. Plaintiff clarifies in his Objection that the hours spent in CRCF's law library were "in open space on camera." (Doc. 63 at 1.)

Upon Plaintiff's invitation, Mr. Morales began attending non-denominational Christian church services on Sundays with Plaintiff. When CRCF became a women's only prison, all male prisoners in the facility, including Mr. Morales and Plaintiff, were transferred to Northwest State Correctional Facility ("NWSCF"). The two men were cellmates for approximately two weeks after their transfer to NWSCF, at which point Plaintiff was moved into a single-person cell. At NWSCF, Plaintiff began working as the assistant to both the recreation coordinator and the law librarian. Plaintiff and Mr. Morales continued to attend church services together. Plaintiff's Objection indicates that all of the services were "monitored by cameras and prison ministry volunteers." *Id.* at 5.

---

[1] A "serious functional impairment" is defined under Vermont law as:

> (A) a disorder of thought, mood, perception, orientation, or memory as diagnosed by a qualified mental health professional, which substantially impairs judgment, behavior, capacity to recognize reality, or ability to meet the ordinary demands of life and which substantially impairs the ability to function within the correctional setting; or
> (B) a developmental disability, traumatic brain injury or other organic brain disorder, or various forms of dementia or other neurological disorders, as diagnosed by a qualified mental health professional, which substantially impairs the ability to function in the correctional setting.

28 V.S.A. § 906(1).

Around May 31, 2012, NWSCF staff began investigating the possibility that Plaintiff had been sexually abusing Mr. Morales. In his Objection and in his Amended Complaint, Plaintiff points out that this investigation extended to other alleged perpetrators as well. (Doc. 57 at 7.) Thereafter, Defendant Stone observed Mr. Morales sweeping Plaintiff's cell. Plaintiff's Objection notes that in his Amended Complaint he alleges that his cell door was "open all the way," (Doc. 63 at 1), "so staff could monitor activity." (Doc. 57 at 6.) Following this incident, Defendant Stone and other prison officials met with Mr. Morales and allegedly asked whether Plaintiff had sexually abused him. Mr. Morales allegedly denied that any abuse had occurred. According to Plaintiff, prison officials did not believe Mr. Morales, moved him to a new unit, and placed Plaintiff in administrative segregation. Authorities allegedly met with Mr. Morales a second time, and he continued to deny the allegations of abuse. During this meeting, prison officials allegedly subjected Mr. Morales to "[a] long line of questioning" concerning "statements that were allegedly given by other prisoners against [Plaintiff]." *Id.* at 8. "Nearly all of the statements" included accusations that Plaintiff was sexually abusing Mr. Morales. *Id.* Following the meeting, Mr. Morales remained in his new unit, and Plaintiff was released from segregation.

During the months that followed, Plaintiff alleges that Defendants retaliated against him in a number of ways, including removing him from his recreation and law library jobs, placing him on fifteen-minute observation checks, moving him to a different living unit, advising him not to contact Mr. Morales to provide legal assistance or religious advice, and ultimately transferring him to a new facility. Plaintiff, who suffers from multiple sclerosis, states that Defendant Hale, who was allegedly aware of Plaintiff's health condition, authorized his transfer in order to interfere with Plaintiff's treatment. This included the alleged failure to ship Plaintiff's medication during his transfer to the new facility.

In the midst of these disciplinary measures, Defendants Hale and Davies, along with other prison officials, conducted a meeting with Plaintiff. During the meeting, Defendant Hale allegedly stated that he terminated Plaintiff's employment with the

3

recreation department "to limit [his] contact with [Mr.] Morales." *Id.* at 23. Likewise, Defendant Hale allegedly terminated Plaintiff's position with the law library to prevent him from having "access to predatorize [Mr.] Morales." *Id.* Defendant Hale allegedly accused Plaintiff of being a "predator," and called him "a convicted sex-offender, a monster, a child-molester, [and] a pedophile." *Id.*

Plaintiff denies that he posed any threat to Mr. Morales and contends that Defendants' accusations of sexual abuse were a ruse and were unsubstantiated. He alleges that Defendants' actions were motivated by a desire to retaliate against Plaintiff for exercising his religious beliefs and for filing grievances against Defendants. Plaintiff notes that ministering and advising Mr. Morales concerning Christianity is a core tenant of his faith.

## II.    Procedural Background.

On January 8, 2013, Plaintiff filed a complaint under 42 U.S.C. § 1983, alleging that a number of prison officials violated his rights under the First, Eighth, and Fourteenth Amendments, as well as RLUIPA. Plaintiff sought injunctive relief and compensatory damages against Defendants in their official and individual capacities.[2]

On April 17, 2013, Defendants filed their motion to dismiss, arguing Plaintiff failed to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6). On May 9, 2013, Plaintiff filed a motion for appointment of counsel.

On May 28, 2013, Plaintiff amended his complaint, limiting his claims to Defendants Andrew Pallito (Commissioner of DOC), Hale (Superintendent at NWSCF), Davies ("CLUS" at NWSCF), and Kory Stone (former caseworker at NWSCF). Although the Amended Complaint was filed outside the twenty-one day window for the filing of amendments "as a matter of course," Fed. R. Civ. P. 15(a)(1), and without Defendants' consent or leave to amend, Fed. R. Civ. P. 15(a)(2), the Magistrate Judge treated the filing as timely. He did so in light of plaintiff's self-represented status and because leave to amend should be "freely give[n]" if sought. Fed. R. Civ. P. 15(a)(2).

---

[2] After filing his original Complaint, Plaintiff filed two motions for summary judgment before discovery began (Doc. 6; Doc. 10), which were denied as premature. (Doc. 17; Doc. 46.)

4

The Magistrate Judge also considered the merits of the pending motion to dismiss using the facts alleged in the Amended Complaint because it "is a nearly-verbatim recitation of the original [c]omplaint, offers no new facts that would affect an assessment of the merits, and differs primarily in its listing of named Defendants and prayer for relief." (Doc. 58 at 9 n.7.)

Plaintiff does not object to the R & R's recommendation that: (1) all money damage claims against Defendants in their official capacities be dismissed in accordance with sovereign immunity; (2) all claims for injunctive relief be dismissed because they have been rendered moot by Plaintiff's transfer to a new facility; (3) Plaintiff's claim for damages under RLUIPA be dismissed because it does not permit claims for damages against individual defendants, either in their official or personal capacities;[3] (4) Plaintiff's retaliation claim under the First Amendment not be dismissed because the alleged retaliatory conduct took place in close temporal proximity to the grievances filed by Mr. Morales and Plaintiff; and (5) Plaintiff's Eighth and Fourteenth Amendment claims should remain intact because Defendants had not moved to dismiss them.

The R & R recommends that Plaintiff's Free Exercise claim under the First Amendment be dismissed for failure to state a claim and that counsel not be appointed because Plaintiff's claims are "thin and his chances of prevailing are therefore poor." *Id.* at 35 (internal quotation marks omitted). The R & R concluded that Plaintiff's Eighth Amendment claim was "thin" because it failed to allege facts indicating that Plaintiff was denied his multiple sclerosis medication as a result of deliberate indifference. Plaintiff objects to the R & R's conclusion that Plaintiff has failed to state a claim under the Free Exercise Clause. In analyzing Plaintiff's Free Exercise claim, the Magistrate Judge assumed arguendo that Defendants had placed a substantial burden on Plaintiff's sincere

---

[3] Plaintiff notes that he did not challenge recommendation that his RLUIPA claim be dismissed because, without counsel, he is not clear as to "why or why not he may or may not be covered." (Doc. 63 at 2.) In other words, Plaintiff argues that his failure to understand the rights afforded under RLUIPA supports his motion for appointment of counsel. Accordingly, the court will consider this argument in conjunction with its consideration of the R & R's recommendation that appointed counsel be denied.

5

religious beliefs by obstructing Plaintiff's ability to act as Mr. Morales's spiritual advisor. Nevertheless, the Magistrate Judge recommended granting Defendants' motion to dismiss because Plaintiff's Amended Complaint "has not identified any reason why Defendants' actions might be considered wholly irrational." (Doc. 58 at 28.) Indeed, the Magistrate Judge concluded that the connection between the actions taken and the goal of limiting unsupervised contact between Plaintiff and Mr. Morales was "relatively tight." *Id.*

Plaintiff contests the Magistrate Judge's further recommendation to deny his motion for appointment of counsel. Plaintiff objects to this conclusion as it relates to his claim under the Eighth Amendment and also argues that he needs counsel to help him understand the law and prepare his case. Accordingly, only Plaintiff's Free Exercise claim and his motion for appointment of counsel remain at issue.[4]

### III.  Analysis and Conclusions of Law.

#### A.  Standard of Review.

A district judge must make a de novo determination of those portions of a magistrate judge's report and recommendation to which an objection is made. Fed. R. Civ. P. 72(b); 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *accord Cullen*, 194 F.3d at 405. A district judge, however, is not required to review the factual or legal conclusions of the magistrate judge as to those portions of a report and recommendation to which no objections are addressed. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985).

"'The objections of [self-represented] parties . . . are generally accorded leniency and should be construed to raise the strongest arguments that they suggest.'" *Williams v.*

---

[4] The court need not address certain of Plaintiff's objections as the R & R addresses those issues in the manner Plaintiff proposes in his Objection. For example, Plaintiff's Objection notes that his Christian faith is "sincer[e]." (Doc. 63 at 2.) The R & R "[a]ssume[s], without deciding, that [Plaintiff's] beliefs are sincere." (Doc. 58 at 26.) Likewise, Plaintiff argues that his claims under the Eighth and Fourteenth Amendments, and his retaliation claim under the First Amendment, should not be dismissed. (Doc. 63 at 7, 11.) However, the R & R explicitly recommends leaving those claims intact. (Doc. 58 at 31-32.)

*Woodhull Med. & Mental Health Ctr.*, 891 F. Supp. 2d 301, 310 (E.D.N.Y. 2012) (quoting *DiPilato v. 7-Eleven, Inc.*, 662 F. Supp. 2d 333, 340 (S.D.N.Y. 2009)). Nevertheless, "even a [self-represented] party's objections to a [r]eport and [r]ecommendation must be specific and clearly aimed at particular findings in the magistrate's proposal, such that no party be allowed a second bite at the apple by simply relitigating a prior argument." *Dixon v. Ragland*, 2007 WL 4116488, at *1 (S.D.N.Y. Nov. 16, 2007) (internal quotation marks omitted).

### B.   Factual Objections.

Plaintiff's Objection takes issue with the following facts omitted from the R & R: (1) Plaintiff's hours spent in CRCF's law library with Mr. Morales were in open space and on camera; (2) all church services were monitored by cameras and prison ministry volunteers; (3) the investigation concerning Mr. Morales originally included additional inmates accused of sexually predatory behavior against Mr. Morales; and (4) whenever Mr. Morales was present in Plaintiff's cell, the cell door was open so that prison officials could monitor their activity. The court does not consider the first two factual objections because they were not included in the Amended Complaint. The remaining two factual objections were included in the Amended Complaint and thus are included in the court's review of the R & R.

### C.   Standard of Review for Motion to Dismiss.

When assessing a motion to dismiss pursuant to Rule 12(b)(6), the court takes the complaint's "factual allegations to be true and draw[s] all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d 66, 71 (2d Cir. 2009). The court need not credit "'legal conclusions'" in the complaint or "'[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements.'" *Id.* at 72 (alteration in original) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). In its analysis under Rule 12(b)(6), the court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Allen v. WestPoint-Pepperell, Inc.*, 945 F.2d 40, 44 (2d Cir. 1991).

7

"[O]nly a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679 (internal citation omitted). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007). Finally, pleadings by self-represented litigants must be construed liberally. *See Erickson*, 551 U.S. at 94; *Chavis v. Chappius*, 618 F.3d 162, 171 (2d Cir. 2010).

**D.    Free Exercise Claim.**

"Prisoners have long been understood to retain some measure of the constitutional protection afforded by the First Amendment's Free Exercise Clause." *Ford v. McGinnis*, 352 F.3d 582, 588 (2d Cir. 2003). Nevertheless, "a generally applicable policy will not be held to violate a [prisoner's] right to free exercise of religion if that policy 'is reasonably related to legitimate penological interests.'" *Redd v. Wright*, 597 F.3d 532, 536 (2d Cir. 2010) (quoting *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 349 (1987)). This same standard applies "to an individual decision to deny a prisoner the ability to engage in some requested religious practice," as is the case here. *Ford*, 352 F.3d at 595 n.15. "This approach ensures the ability of corrections officials to anticipate security problems and to adopt innovative solutions to the intractable problems of prison administration, and avoids unnecessary intrusion of the judiciary into problems particularly ill suited to resolution by decree." *O'Lone*, 482 U.S. at 349-50 (internal quotation marks omitted). It is also consistent with the "high level of deference" courts must accord to prison officials. *Ford*, 352 F.3d at 595.

A prisoner mounting a Free Exercise challenge "must show at the threshold that the disputed conduct substantially burdens his sincerely held religious beliefs." *Salahuddin v. Goord*, 467 F.3d 263, 274-75 (2d Cir. 2006). Although the Second Circuit has applied the "substantial burden" standard in its most recent Free Exercise cases, it has

8

done so while explicitly refusing to adopt or endorse the test. *See id.* at 274 n.3 ("We do not decide today what effect the Supreme Court's decision in *Employment Division v. Smith*, 494 U.S. 872 (1990), has on the *O'Lone* standards for judging prisoner [Free Exercise] claims because neither party argues that *Smith* changes the analysis."); *Ford*, 352 F.3d at 594 n.13 (applying the *O'Lone* framework where the government did not argue that *Smith* altered the *O'Lone* standards). Adopting for the purposes of this motion to dismiss a substantial burden standard, "[t]he defendants then bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 275. Once identified, "the burden remains with the prisoner to show that these articulated concerns were irrational." *Id.* (internal quotation marks and alteration omitted); *see also Overton v. Bazzetta*, 539 U.S. 126, 132 (2003) (observing that, in a Free Exercise case, the burden "is not on the State to prove the validity of prison regulations but on the prisoner to disprove it"). Courts consider the *Turner* factors when evaluating the "reasonableness" of the official action:

> whether the challenged regulation or official action has a valid, rational connection to a legitimate governmental objective; whether prisoners have alternative means of exercising the burdened right; the impact on guards, inmates, and prison resources of accommodating the right; and the existence of alternative means of facilitating exercise of the right that have only a de minimis adverse effect on valid penological interests.

*Salahuddin*, 467 F.3d at 274 (footnote omitted) (citing *Turner v. Safley*, 482 U.S. 78, 90-91 (1987)).

### 1. Substantial Burden on Sincerely Held Religious Beliefs.

"An individual claiming violation of free exercise rights need only demonstrate that the beliefs professed are sincerely held and in the individual's own scheme of things, religious." *Fifth Ave. Presbyterian Church v. City of New York*, 293 F.3d 570, 574 (2d Cir. 2002) (internal quotation marks omitted). The First Amendment is not confined "to only those religious practices that are mandatory." *Ford*, 352 F.3d at 593. Instead, the "relevant question" is whether the religious practice at issue "is considered central or important to [the prisoner's] practice of [his religion]." *Id.* at 593-94. Construing

Plaintiff's Amended Complaint liberally, he has alleged that counseling others is central to his faith, and that, with respect to Mr. Morales, Plaintiff alleges that he introduced him to the faith and that limiting their contact obstructs his efforts to act as Mr. Morales's spiritual advisor. These factual allegations are sufficient to satisfy Plaintiff's threshold burden of demonstrating that his religious beliefs are sincerely held and that the alleged practice is central or important to the practice of his religion.

As part of his initial burden, Plaintiff must next allege a plausible claim that Defendants' conduct substantially burdens his sincerely held religious beliefs. Here, he points to Defendants' alleged limitations on his contact with Mr. Morales even when it allegedly included religious fellowship and counseling. Plaintiff also alleges that he was subjected to severe disciplinary measures for exercising his faith, such as terminating his positions of employment and placing him in administrative segregation. These factual allegations are also sufficient to meet Plaintiff's burden.

### 2. Legitimate Penological Interests.

Defendants then "bear the relatively limited burden of identifying the legitimate penological interests that justify the impinging conduct." *Salahuddin*, 467 F.3d at 275. Generally, courts must not speculate as to the conceivable justifications for prison officials' conduct or determine the basis of that justification from the complaint alone. *See id.* ("Neither the district court nor [the Second Circuit] can manufacture facts out of thin air."); *Shakur v. Selsky*, 391 F.3d 106, 115 (2d Cir. 2004) (explaining that courts will generally not uphold prison regulations "on the face of the complaint alone") (internal quotation marks omitted); *Thomas v. Scully*, 943 F.2d 259, 260 (2d Cir. 1991) (per curiam) (holding that the district court erred by providing its own rationale for a prison regulation on a motion to dismiss under Rule 12(b)(6) because doing so went "beyond the face of the complaint and addressed the merits of the case"); *Farid v. Smith*, 850 F.2d 917, 925-26 (2d Cir. 1988) (finding that prison officials must "articulate" the penological interest with "record evidence" rather than "unsworn statement[s]" from pleadings). Nevertheless, "'there are regulations so obviously related to legitimate penological concerns that challenges to them may be dismissed . . . based simply on an (irrefutable)

10

common sense determination.'" *Shakur*, 391 F.3d at 115 n.4 (alteration in original) (quoting *Giano v. Senkowski*, 54 F.3d 1050, 1059 (2d Cir. 1995) (Calabresi, J., dissenting)). At issue in this case is whether the Magistrate Judge erred in supplying Defendants' penological justification for their alleged conduct by looking to Plaintiff's Amended Complaint.

Plaintiff's Amended Complaint repeatedly alleges that Defendants justified their conduct by advising both Plaintiff and Mr. Morales that Defendants suspected Plaintiff was engaging in a predatory sexual relationship with Mr. Morales, an inmate designated as "severely functionally impaired," and that the actions taken were designed to prevent unsupervised contact between Plaintiff and Mr. Morales.[5] *See Palmer v. Rustin*, 2011 WL 2489820, at *9 (W.D. Pa. June 21, 2011) (examining the factual allegations in the plaintiff's complaint on a motion to dismiss under Rule 12(b)(6) for the penological interest behind prohibiting the plaintiff from attending Muslim religious services). However, Plaintiff also alleges that Defendants' purported concern was a ruse and was unsubstantiated. In essence, he argues that Defendants had other means of monitoring his actions with Mr. Morales that would have allowed Plaintiff an "alternative means of exercising the burdened right," and that Defendants had the ability and resources to "accommodate the right." *Salahuddin*, 467 F.3d at 274. He argues that these accommodations would have "only a de minimis adverse effect on valid penological interests." *Id.* Plaintiff further alleges that Defendants had no evidence that Plaintiff had actually engaged in predatory sexual actions while incarcerated, and that Defendant Hale admitted that Plaintiff may have been wrongfully convicted of aggravated sexual assault. In sum, Plaintiff contends that "[n]one of [Defendant] Hale's actions seemed to add up." (Doc. 57 at 21.) In other words, there was no actual justification for the disciplinary

---

[5] For example, the Amended Complaint alleges that Defendant Hale stated to Plaintiff: "I'm going to take away your law library job so you can't have access to predatorize Martin Morales." (Doc. 57 at 23.) As for Plaintiff's job with the recreation department, Defendant Hale allegedly reported to Mr. Morales: "Let me be clear about my intentions. I am trying to keep Shane Casey away from you. He is . . . a predator." *Id.* at 22. Defendant Hale also allegedly "claimed that [Plaintiff] was sexually abusing [Mr.] Morales in his cell." *Id.* at 13.

11

actions taken against Plaintiff, which were not tailored to the alleged threat Defendants sought to address.

Defendants' decision to separate Plaintiff and Mr. Morales so that they could no longer share the same cell and have contact is clearly related to Defendants' penological interest in discouraging sexual predation, and Plaintiff does not argue otherwise. It is less clear, however, that all of Plaintiff's employment needed to be terminated to achieve this same end. Because the court cannot make a common sense determination that terminating Plaintiff's employment was reasonably related to legitimate penological interests, the court must await Defendants' evidence on this issue. The court therefore ADOPTS IN PART the R & R's conclusion regarding Plaintiff's Free Exercise claim and dismisses all claims except those related to termination of Plaintiff's employment.

### E. Motion for Appointment of Counsel.

"A party has no constitutionally guaranteed right to the assistance of counsel in a civil case." *Leftridge v. Conn. State Trooper Officer No. 1283*, 640 F.3d 62, 68 (2d Cir. 2011). However, 28 U.S.C. § 1915(e)(1) authorizes a district court to "request an attorney to represent any person unable to afford counsel." The court "considers motions for appointment of counsel by asking first whether the claimant has met 'a threshold showing of some likelihood of merit.'" *Johnston v. Maha*, 606 F.3d 39, 41 (2d Cir. 2010) (quoting *Cooper v. A. Sargenti Co.*, 877 F.2d 170, 174 (2d Cir. 1989)). "Thus, even though a claim may not be characterized as frivolous, counsel should not be appointed in a case where the merits of the indigent's claim are thin and his chances of prevailing are therefore poor." *Carmona v. U.S. Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). Only after finding that the plaintiff's claim is of substance, will the court consider prudential factors such as:

> the indigent's ability to investigate the crucial facts, whether conflicting evidence implicating the need for cross-examination will be the major proof presented to the fact finder, the indigent's ability to present the case, the complexity of the legal issues and any special reason in that case why appointment of counsel would be more likely to lead to a just determination.

12

*Hodge v. Police Officers*, 802 F.2d 58, 61-62 (2d Cir. 1986).

Plaintiff objects to the Magistrate Judge's recommendation that he be denied appointed counsel to represent him in pursuing his Eighth Amendment claim. "In order to state a cognizable claim [under the Eighth Amendment], a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Mere negligence is insufficient to establish deliberate indifference. *Estelle*, 429 U.S. at 106. "Because the Eighth Amendment is not a vehicle for bringing medical malpractice claims, nor a substitute for state tort law, not every lapse in prison medical care will rise to the level of a constitutional violation." *Smith v. Carpenter*, 316 F.3d 178, 184 (2d Cir. 2003).

Plaintiff argues that Defendant Hale was aware of Plaintiff's "serious health issues and treatment needs" and was thus "clearly showing deliberate indifference" when he transferred Plaintiff to another facility, thereby interfering with Plaintiff's prescribed medical injections.[6] (Doc. 63 at 9.) Without facts supporting Plaintiff's allegation that Defendants acted with the requisite state of mind, Plaintiff's claim under the Eighth Amendment fails to satisfy "the threshold standard of likely merit." *Johnston*, 606 F.3d at 42; *see also Shire v. Alves*, 8 F. Supp. 2d 225, 227 (W.D.N.Y. 1998) (declining to appoint counsel for inmate's claim of deliberate indifference where complaint lacked evidence of prison official's culpable mental state).

---

[6] Plaintiff alleged in his Amended Complaint that when Defendant Hale transferred Plaintiff his medication was not transported with him thereby interfering with his treatment schedule. (Doc. 57 at 27.) In his R & R, the Magistrate Judge notes that, based on those bare facts, Plaintiff had not alleged that Defendant Hale acted with "deliberate indifference." (Doc. 58 at 34.) In his Objection, Plaintiff rearticulates his allegations and explicitly contends that Defendant Hale "clearly" acted with "deliberate indifference." (Doc. 63 at 9.) The court accepts this as a refinement of Plaintiff's legal argument. *See Wells Fargo Bank N.A. v. Sinnott*, 2010 WL 297830, at *2 (D. Vt. Jan. 19, 2010) ("[A] district court has the discretion to consider, or decline to consider, an argument raised for the first time in an objection to a magistrate judge's report and recommendation . . . .").

Plaintiff's RLUIPA claim fares no better. The court agrees with the R & R's conclusions that RLUIPA does not permit claims for damages against Defendants, either in their official or personal capacities, and that Defendant's request for injunctive relief is rendered moot by his transfer to the new facility.

The prudential factors also weigh against granting counsel to Plaintiff. Plaintiff was employed at two correctional facilities in the law library and has not demonstrated any inability to establish facts or make legal arguments. Plaintiff's Amended Complaint demonstrates that he is capable of articulating facts within the relevant constitutional framework, and his filings indicate that he can cite to pertinent legal authority to support his position. This case does not present novel or thorny legal issues, and the facts are not complex. Although Plaintiff notes that he does not understand why his RLUIPA claim was dismissed, the R & R thoroughly explains the grounds for dismissal. The court therefore DENIES Plaintiff's motion for appointment of counsel.

## CONCLUSION

For the reasons stated above, the court hereby ADOPTS IN PART the Magistrate Judge's R & R. (Doc. 58.)

SO ORDERED.

Dated at Rutland, in the District of Vermont, this 18th day of December, 2013.

Christina Reiss, Chief Judge
United States District Court